**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No.: 25-cv-80071-REINHART

GARY FELSHER,

     Plaintiff,

v.

W. MONSEES STUBBS, JR.,

     Defendant.

                                 /

## DEFENDANT W. MONSEES STUBBS, JR.'S MOTION FOR SUMMARY JUDGMENT

Defendant W. Monsees Stubbs, Jr. ("Stubbs") moves for summary judgment under Federal Rule of Civil Procedure 56 on the sole claim for breach of contract asserted against him by Plaintiff Gary Felsher ("Felsher") in the Complaint, ECF No. [1-3], as well as on Stubbs' affirmative defense of statute of limitations and states:

### UNDISPUTED FACTS

FGHP Capital Limited Partnership ("FGHP") was formed to consummate a business venture with respect to a NationsBank portfolio of debt instruments and real properties identified by Stubbs and presented to Felsher. SOF ¶¶ 4, 6. On or about December 30, 1992, Felsher and Stubbs executed the F&S Agreement attached to the Complaint as Exhibit A. SOF ¶ 7. On or about January 8, 1993, Felsher, Stubbs, and a number of limited partners executed the FGHP Agreement attached to the Complaint as Exhibit B. SOF ¶ 8.

Felsher is not presently, nor has he ever been, the sole Class A partner of FGHP. SOF ¶ 14. Rather, Felsher and Stubbs are both Class A partners of FGHP, as well as Class B partners of FGHP. SOF ¶¶ 12-13. The General Partner of FGHP is an entity named Garmont Capital, Inc.

SOF ¶ 15. Pursuant to the F&S Agreement, Stubbs owns a 50% interest in the General Partner, Garmont Capital, Inc. SOF ¶ 16. Section 6.3(a) of the FGHP Agreement provides, in part:

> The General Partner shall have full and complete charge of all affairs of the Partnership, and the management and control of the Partnership's business shall rest exclusively with the General Partner, subject to the terms and conditions of this Agreement [. . .] Stubbs agrees that, as an officer of the General Partner, for a period of one year following the first closing at which Class A Limited Partners are admitted to the Partnership, he shall devote substantially all of his business time and energies to the business of the Partnership. Thereafter, as an officer of the General Partner, ***Stubbs shall devote to the conduct of the business of the Partnership such of his time and attention as shall be necessary or appropriate to accomplish the purposes, and to conduct properly, diligently and prudently the business, of the Partnership***.

SOF ¶¶ 17-18 (emphasis added). Neither the FGHP Agreement nor any other written agreement between Felsher and Stubbs defines the phrase "such of his time and attention as shall be necessary or appropriate to accomplish the purposes, and to conduct properly, diligently and prudently the business, of the Partnership," as stated in Section 6.3(a) of the FGHP Agreement. SOF ¶¶ 19-20. Neither the express terms of the F&S Agreement nor the express terms of the FGHP Agreement state that Stubbs is responsible for the day-to-day management or day-to-day operations of FGHP's properties. SOF ¶¶ 22-26.

Stubbs has, at all relevant times, been ready and willing to participate in the management of FGHP as necessary. SOF ¶ 27. Stubbs has never declined to perform any service for FGHP after being asked by any Class A partner, including Felsher. SOF ¶ 29. Stubbs, as a Class A partner, believed that he was meeting his obligations under Section 6.3(a) of the FGHP Agreement. SOF ¶ 30. Within the past five years, Stubbs has (i) presented business opportunities to FGHP; (ii) executed guarantees related to FGHP's refinancing of loans with commercial lenders concerning its properties; (iii) executed one or more loan documents concerning the properties at the request of FGHP; and (iv) visited FGHP's properties. SOF ¶¶ 31-35.

2

Stubbs also established an infrastructure for FGHP's operations. FGHP has used outside companies to provide management and operation services of the Properties and the partnership itself. SOF ¶ 39. These companies include Avison Young, Colliers, Urban Retail Properties, LLC. SOF ¶¶ 40-46. Additionally, Steve Swann, an independent contractor, provides day-to-day management services to an FGHP property in Tampa, Florida. SOF ¶ 47.

Stubbs further created the entity Pembroke Capital LLC ("Pembroke Capital"), which he owned 50-50 with Felsher from approximately 2001 through 2019. SOF ¶¶ 48-50, 53. Pembroke Capital LLC performed administrative tasks for FGHP including but not limited to tracking income and expenses and paying bills, performed operations for FGHP's properties, and oversaw any third-party companies managing the Properties. SOF ¶¶ 51-52. In or about 2008, Pembroke Capital LLC hired Jay Benowitz as its "controller," as a W-2 employee. SOF ¶ 55. Felsher approved Stubbs' hiring of Benowitz, and both Stubbs and Felsher trained Benowitz. SOF ¶¶ 56-57. Benowitz's duties included: overseeing operations of the Properties, reviewing lease abstracts, reconciling rent rolls and budget variances, handling tenant issues, preparing lease expiration reports, coordinating with brokers, and coordinating payment of bills and invoices. SOF ¶ 58. Benowitz always reported to Stubbs and Felsher for management-level approval as needed. SOF ¶ 60. Felsher never told Benowitz to stop reporting to him or to report to Stubbs instead. SOF ¶ 61.

In 2019, Felsher acquired 100% of the ownership of Pembroke Capital. SOF ¶ 62. At some time in or after 2019, Felsher changed the management company of FGHP from Pembroke Capital to FGH Management Group LLC. SOF ¶ 63. Benowitz is now employed by FGH Management Group LLC, but his duties have not changed. SOF ¶ 64. Stubbs does not currently own, and is not an employee of, either Pembroke Capital or FGH Management Group LLC, and Felsher never

presented an opportunity for Stubbs to be an owner or employee of FGH Management Group. SOF ¶¶ 65-66.

Overall, FGHP has been a successful partnership. SOF ¶ 67. Felsher has received over $20 million to date from FGHP. SOF ¶ 68. Felsher did not assert to Stubbs that Stubbs was in breach of either the F&S Agreement or the FGHP Agreement at any time prior to October 8, 2024. SOF ¶¶ 69-70. No other FGHP partner has ever asserted that Stubbs was in breach of section 6.3 of the FGHP Agreement or that he otherwise failed to devote the time and attention necessary to conduct the business of FGHP. SOF ¶ 71. And, none of FGHP's properties were improperly maintained or neglected at any time. SOF ¶ 72.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), summary judgment "shall" be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." While the moving party bears the burden of establishing there is no "genuine dispute as to any material fact," that burden may be met "by demonstrating that there is a lack of evidence to support the essential elements that the non-moving party must prove at trial." *Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011).

A court must decide whether the parties' evidence "presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). "The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 248–49. An issue of fact is "genuine" only if "the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1050

4

(11th Cir. 2015). And a fact is "material" only if it might affect the outcome of the case under the applicable substantive law. *Anderson*, 477 U.S. at 248.

Moreover, "[f]or factual issues to be considered genuine, they must have a real basis in the record." *Mann v. Taser Int'l Inc.*, 588 F.3d 1291, 1303 (11th Cir. 2009). A mere "scintilla of evidence in support of the [nonmovant's] position," or "some metaphysical doubt as to the material facts," is insufficient to defeat summary judgment. *Anderson*, 477 U.S. at 252; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, "there must be evidence on which the jury could reasonably find for the [nonmovant]." *Anderson*, 477 U.S. at 252.

## ARGUMENT

The Court should grant summary judgment for Stubbs on the sole count of the Complaint for breach of contract, as well as Stubbs' affirmative defenses of statute of limitations. The statute of limitations bars Felsher's request for specific performance (one year), and any other relief for breach of contract (five years), as the alleged breaches occurred over five years prior to the filing of the Complaint. Additionally, summary judgment should be granted for Stubbs on Felsher's sole breach of contract claim because (i) the undisputed facts show that Stubbs did not commit any material breach of the F&S Agreement (or the FGHP Agreement); and (ii) the undisputed facts show that Felsher did not suffer damages and instead benefitted from the actions of Stubbs.

## I.     The Statute of Limitations bars the recovery sought by Felsher.

The statute of limitations for actions seeking specific performance of a contract is one year. Fla. Stat. § 95.11(6)(a). According to Felsher, he discovered the alleged breach of the F&S Agreement by Stubbs no later than 2021. SOF, Ex. B at 125:15-20. Further, in breach of contract actions, the statute of limitations accrues when the breach actually occurs—not when the opposing party discovers the breach, making the operative date some time before 2021. *Access Ins. Planners,*

5

*Inc. v. Gee*, 175 So. 3d 921, 925 (Fla. 4th DCA 2015) ("[T]he Florida Supreme Court has refused to apply the delayed discovery doctrine to breach of contract cases."); *see also Med. Jet, S.A. v. Signature Flight Support-Palm Beach, Inc.*, 941 So. 2d 576, 578 (Fla. 4th DCA 2006) ("For a breach of contract action, it is well established that a statute of limitations 'runs from the time of the breach, although no damage occurs until later.'"). Felsher filed his Complaint on December 18, 2024, seeking in part, specific performance of the F&S Agreement. ECF No. [1-3]. Given the date of discovery of the alleged breach (and the inevitably earlier occurrence of the same), this claim for specific performance is untimely, and summary judgment should be granted for Stubbs on his first affirmative defense of statute of limitations.

Additionally, the statute of limitations for other actions based on a written contract is five years. Fla. Stat. § 95.11(2)(b). Felsher asserts that he has been performing numerous tasks allegedly delegated to Stubbs since at least 2015—nine years before filing this action. SOF, Ex. C at No. 4(a); ECF No. [34-2] at 2. Those tasks include:

> [L]ease negotiations for the more than ninety (90) tenants occupying the Properties; tenant alteration reviews and approvals; leasing commission reviews and approvals; review, analysis, and approval of proposed capital investments, invoices, budgets, monthly financials (including recurring financial statements), distributions, tax returns, rent roll changes, refinancing documents, and refinancing negotiations; purchase, analysis, and procurement of insurance (including recurring review of same); handling various recurring issues with the Properties including tenant issues, Covid-19 issues, and other management-level issues which required frequent communication with third-party property managers and third-party leasing brokers; management of investor relations; participating in meetings with attorneys on an as-needed basis concerning lease changes, tenant arrears collections, tenant evictions, compliance with state and local laws, and lawsuits; and all other day-to-day operational aspects of the Properties requiring management-level review and approval.

ECF No. [34-2] at 2; SOF, Ex. C at No. 4(a). The fact that Felsher "discovered" Stubbs' alleged breach in 2021 is of no moment, as the statute of limitations runs from the date of the breach, not its discovery. *Access Ins.*, 175 So. 3d at 925; *Med. Jet, S.A.*, 941 So. 2d at 578. Because Felsher

alleges he (and not Stubbs) was performing these tasks since at least 2015, they cannot form the basis for his breach of contract claim as they are barred by the statute of limitations. Given the date of the alleged breach, this claim for breach of contract is untimely, and summary judgment should be granted for Stubbs on his first affirmative defense of statute of limitations.

**II.    The breach of contract claim fails because Stubbs did not materially breach any contract.**

The elements of a breach of contract claim under Florida law are "(1) a valid contract; (2) a material breach; and (3) damages." *Rauch, Weaver, Norfleet, Kurtz & Co., Inc. v. AJP Pine Island Warehouses. Inc.*, 313 So. 3d 625, 630 (Fla. 4th DCA 2021). The claim fails because Stubbs fulfilled his contractual obligations and did not commit any material breach.

The F&S Agreement, referencing the FGHP Agreement, requires Stubbs to: "devote to the conduct of the business of the Partnership such of his time and attention as shall be necessary or appropriate to accomplish the purposes, and to conduct properly, diligently, and prudently the business, of the Partnership." SOF ¶ 18. That is all. Neither the express terms of the F&S Agreement nor the FGHP Agreement require Stubbs to perform the day-to-day management or day-to-day operations of FGHP. SOF ¶¶ 21–26. It is undisputed that no other written or oral agreement exists which further defined the parameters of this requirement. SOF ¶¶ 19–21.

Rather, the FGHP Agreement provides, also in Section 6.3, that "[t]he ***General Partner*** shall have full and complete charge of all affairs of the Partnership, and the management and control of the Partnership's business shall rest exclusively with the General Partner, subject to the terms and conditions of this Agreement." SOF ¶ 17. The General Partner of FGHP is Garmont Capital, Inc.—not Felsher. SOF ¶ 15.

In response to this inquiry, Felsher testified:

**Q:** Who decides such of his time and attention as shall be necessary –

7

**A:** The Class A partners would.

**Q:** Okay. And has that been consistent throughout the – since the inception of the partnership?

**A:** The partnership agreement hasn't changed.

SOF, Ex. B at 102:4-9. Which, even if true, does not mean that Felsher alone is able to determine the parameters of Stubbs' obligations, as he is not and has never been, the sole Class A partner of FGHP. SOF ¶ 14.

In other words, either Garmont Capital or the Class A partners of FGHP were to decide the parameters of Stubbs' time and attention necessary to accomplish the purposes of the business. Pursuant to the terms of the F&S Agreement, Felsher and Stubbs owned Garmont Capital on a 50-50 basis. SOF ¶¶ 12, 16. At the time of FGHP's formation, the Class A partners included: Felsher, Stubbs, Centurion Management, Mark Fine Trust, Steven Levinson, Laura Sloate, Morris Weisman, Neil Weisman, Gary S. Fragin, Eliezer Peleg, Joel Pearlberg, Denise Rich, Michael Steinhardt, and Shimon Topor. SOF ¶ 10. The undisputed facts show that *none* of these individuals—apart from Felsher in a single letter in October 2024—ever expressed dissatisfaction with or otherwise disputed the parameters of Stubbs' duties under Section 6.3 of the FGHP Agreement. SOF ¶¶ 69–71.

And Felsher is not and has never been the sole decisionmaker of either Garmont Capital or the Class A partners such that he could unilaterally determine the "time and attention as shall be necessary or appropriate to accomplish the purposes, and to conduct properly, diligently, and prudently the business, of the Partnership," as he now attempts to do. SOF ¶¶ 14, 16. While some of the initial Class A partners have changed, through and including the present day, both the Garmont Capital owners and the Class A partners have always included both Felsher *and Stubbs*.

SOF ¶¶ 10–14, 16. Stubbs certainly believes that he has fulfilled his obligations under the FGHP and F&S Agreement—and he is at least one of two decisionmakers in that regard. SOF ¶ 30.

Further, Felsher cannot articulate exactly what Stubbs has purportedly failed to do and when. Most notably, Felsher testified that "FGHP owns the properties; FGHP does not operate the properties, okay . . . FGHP is the owner. ***Everything for FGHP is done through other entities***." Felsher Dep. at 112:23-113:9. Which is true. Since the inception of the Partnership, its operations have flowed through "other entities," established either by Stubbs, Felsher, or existing as independent contractors. SOF ¶¶ 39–47, 50–53, 58. Felsher cannot demonstrate a material breach of specific contractual obligations, thus the breach of contract claim against Stubbs must fail.

### III.     The breach of contract claim fails because Felsher has no damages.

The elements of a breach of contract claim under Florida law are "(1) a valid contract; (2) a material breach; and (3) damages." *Rauch, Weaver*, 313 So. 3d 625, 630 (Fla. 4th DCA 2021). The breach of contract claim also fails because Felsher did not suffer damages.

The undisputed facts show that Felsher suffered no damages as a result of Stubbs' conduct. Felsher testified as follows:

**Q:** Have you lost any money as a result of Monte [Stubbs'] conduct?

**A:** Money? Yeah. I've lost time, and time is more valuable than money.

SOF ¶ 73 (quoting SOF, Ex. B at 178:16-19). Felsher further testified that he has "been required to do all the work that [Stubbs] was supposed to be doing . . . And I didn't want to do this work, but I had to do the work because I don't let businesses fail." SOF, Ex. B at 178:3-10. Yet, Felsher voluntarily assumed these undefined roles and responsibilities within the Partnership and did not communicate with Stubbs at any time requesting that he instead assume them. SOF ¶ 61. Benowitz similarly testified:

> Q: So why did you stop going to Monte [Stubbs] with things and start going to Gary [Felsher]?
>
> A: . . . [T]he answer to the question is I'm an employee of the company; I needed someone to go to. Gary would always answer his phone, and it was just easier to go to him . . . So, just Gary stepped in. Or maybe I pushed him in, in a way, because he was there.
>
> [. . .]
>
> Q: So Gary didn't object to you coming to him for –
>
> A: No.

SOF ¶¶ 60–61 (quoting SOF, Ex. E at 50:2-17, 51:6-8). Benowitz was never told to report to Felsher rather than Stubbs; conversely was never instructed to revert to Stubbs for any decisions; and never heard Felsher or any other partner voice dissatisfaction with Stubbs' performance. Similarly, there is no evidence that Stubbs refused any request by Benowitz or anyone else on behalf of FGHP. Benowitz simply, out of convenience, began reporting to Felsher, and Felsher voluntarily obliged. SOF ¶¶ 60–61. Felsher cannot now claim that he was "damaged" by the voluntary assumption of ambiguous tasks that consumed his time.

Indeed, Felsher **benefitted** immensely from Stubbs' actions over the life of the Partnership. SOF ¶¶ 67-68. Felsher testified that he received distributions of over "$20 million" from the Partnership, and agreed that the Partnership had been "very successful." SOF ¶¶ 67-68. He cannot point to any losses incurred by the Partnership attributable to Stubbs' actions or inactions, and instead cites only to his "time," as lost, despite the fact that he voluntarily expended the same. SOF ¶¶ 60–61, 72–73. Because Felsher has not suffered any damages, his breach of contract claim must fail.

**CONCLUSION**

For the reasons discussed above, the Court should grant summary judgment in favor of Stubbs on Felsher's sole claim for breach of contract as well as Stubbs' affirmative defense of statute of limitations.

Dated: December 17, 2025                Respectfully submitted,

**JONES FOSTER P.A.**
505 South Flagler Drive, Suite 1100
West Palm Beach, FL 33401
T: (561) 659-3000
F: (561) 650-5300

By: */s/ Spencer S. Keyser*_____
    Scott G. Hawkins
    Florida Bar No. 460117
    shawkins@jonesfoster.com
    Spencer S. Keyser
    Florida Bar No. 111575
    skeyser@jonesfoster.com
    Danielle L. Jakeman
    Florida Bar No. 1026388
    djakeman@jonesfoster.com

    *Attorneys for Defendant W. Monsees Stubbs*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 17, 2025, I electronically filed the foregoing document using the CM/ECF system, which will send notification of filing to all counsel of record.

By: __*/s/ Spencer S. Keyser*__

11