**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No.: 25-cv-80071-REINHART**

GARY FELSHER,

    Plaintiff,

v.

W. MONSEES STUBBS, JR.,

    Defendant.

_____/

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................ 1

II.   LEGAL STANDARD ON A MOTION FOR SUMMARY JUDGMENT ........................ 2

III.  ARGUMENT AND MEMORANDUM OF LAW.................................................... 3

   A. DEFENDANT MATERIALLY BREACHED THE F&S AGREEMENT ....................................... 3

   B. Defendant's Affirmative Defenses do not Preclude Entry of Summary
      Judgment ........................................................................................................... 5

      i.   Defendant's Equitable Affirmative Defenses All Fail as a Whole ......................... 5

      ii.  Defendant's Affirmative Defenses Independently Lack Merit.............................. 7

         1. Statute of Limitations................................................................................ 7

         2. Waiver ...................................................................................................... 9

            a. Defendant Cannot Satisfy the Elements of Waiver .................................... 9

            b. Defendant's Affirmative Defense of Waiver Fails to Satisfy Two
               Additional Common Law Requirements .................................................. 10

         3. Laches ..................................................................................................... 11

            a. Laches Does Not Apply Where a Claim was Filed Within the
               Statute of Limitations, Such as Here........................................................ 12

            b. Defendant Cannot Establish Evidentiary Prejudice................................. 13

            c. Defendant Cannot Establish Economic Prejudice ................................... 13

         4. Ratification.............................................................................................. 14

         5. Set-off ..................................................................................................... 15

         6. Substantial Performance .......................................................................... 16

         7. Unconscionability .................................................................................... 18

IV.   CONCLUSION................................................................................................. 20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Air Prods. Chem., Inc. v. Louisiana Land Exploration Co.*,
    867 F.2d 1376 (11th Cir. 1989) ....................................................................................10

*American Pacific Dairy Products v. Siciliano*,
    235 F.2d 74 (9th Cir. 1956) ............................................................................................4

*Apotex, Inc. v. UCB, Inc.*,
    970 F.Supp.2d 1297 (S.D. Fla. Sept. 9, 2013) (overruled on other grounds) ....................11, 12

*In re Appliance No., Inc.*,
    568 B.R. 843 (Bankr. M.D. Fla. March 20, 2017)....................................................................3

*Bach v. Florida State Board of Dentistry*,
    378 So. 2d 34 (Fla. 1st DCA 1979) ..............................................................................14

*Baggett Bros. Farm, Inc. v. Altha Farmer's Co-op, Inc.*,
    2008 WL 3979493 (N.D. Fla. Aug. 21, 2008).........................................................................13

*In re Bingham Bridge*,
    70 U.S. 51 (1865)..............................................................................................................3, 4

*Black Warrior Riverkeeper, Inc. v. U.S. Army Corps of Engineers*,
    781 F.3d 1271 (11th Cir. 2015) .....................................................................................11

*Branco v. Southern Operations, LLC*,
    2018 WL 4410055 (S.D. Fla. July 19, 2018)...........................................................................18

*Chabad of Key Biscayne Inc. v. Scottsdale Ins. Co.*,
    631 F. Supp. 3d 1250 (S.D. Fla. Sept. 28, 2022) (Gayles, J.)..................................................3

*City of Quincy v. Womack*,
    60 So. 3d 1076 (Fla. 1st DCA 2011) .............................................................................8

*In re Colony Beach & Tennis Club Ass'n, Inc.*,
    454 B.R. 209 (M.D. Fla. July 27, 2011) ..............................................................................18

*Energy Smart Industry, LLC v. Morning View Hotels-Beverly Hills, LLC*,
    112 F.Supp.3d 1330 (S.D. Fla. June 3, 2015)............................................................16, 17, 18

*Equal Employment Opportunity Commission v. Dresser Indus., Inc.*,
    668 F.2d 1199 (11th Cir. 1982) .....................................................................................11

*Ferry–Morse Seed Co. v. Hitchcock*,
    426 So. 2d 958 (Fla. 1983)................................................................................................9

*In re Ferry*,
    631 B.R. 790 (M.D. Fla. July 13, 2021) ...........................................................................9, 10

*Fireman's Fund Ins. Co. v. Vogel*,
    195 So. 2d 20 (Fla. 2d DCA 1967) ...............................................................................9

*FL-Carrollwood Care, LLC v. Gordon*,
    72 So. 3d 162 (Fla. 2d DCA 2011) ................................................................................18

*Gaines v. Gaines*,
    870 So. 2d 187 (Fla. 4th DCA 2004) ............................................................................11

*GE Medical Systems S.C.S. v. SYMX Healthcare Corp.*,
    2021 WL 821433 (S.D. Fla. March 4, 2021) .................................................................3

*Gibson v. Lynn University, Inc.*,
    504 F.Supp.3d 1335 (S.D. Fla. Nov. 29, 2020) ...........................................................14

*Grove Isle Ass'n v. Grove Isle Assocs., LLLP*,
    137 So. 3d 1081 (Fla. 3d DCA 2014) .............................................................................8

*Health First, Inc. v. Hynes*,
    2014 WL 12648552 (M.D. Fla. Sept. 17, 2024) ..........................................................12

*Hume v. United States*,
    132 U.S. 406 (1889)......................................................................................................18

*Ideal Image Dev. Corp. v. Idealaser Hair Removal Corp.*,
    2019 WL 3890345 (S.D. Fla. June 25, 2019) ..............................................................11

*Kason Indus., Inc. v. Component Hardware Group, Inc.*,
    120 F.3d 1199 (11th Cir. 1997) ....................................................................................11

*Kellogg v. Fowler, White, Burnett, Hurley, Banick & Strickroot, P.A.*,
    807 So. 2d 669 (Fla. 4th DCA 2001) ...........................................................................15

*L.R. v. Dep't of Children & Families*,
    822 So. 2d 527 (Fla. 4th DCA 2002) .............................................................................9

*Lazovitz, Inc. v. Saxon Constr., Inc.*,
    911 F.2d 588 (11th Cir. 1990) ......................................................................................17

*Leonardo v. State Farm Fire Cas. Co.*,
    675 So. 2d 176 (Fla. 4th DCA 1996) .............................................................................9

*Leverso v. SouthTrust Bank of AL., Nat. Assoc.*,
    18 F.3d 1527 (11th Cir. 1994) ........................................................................................3

*Local Union No. 1055, Intern. Broth. of Elec. Workers, AFL-CIO v. Gulf Power
    Co.*,
    182 F.Supp. 950 (N.D. Fla. April 18, 1960) ..................................................................5

*MDS (Canada), Inc. v. Rad Source Technologies, Inc.*,
    822 F.Supp.2d 1263 (S.D. Fla. Sept. 30, 1992) ............................................................3

*Measday v. Kwik-Copy Corp.*,
    713 F.2d 118 (5th Cir. 1983) ........................................................................................17

*Meyers v. Asics Corp.*,
    974 F.2d 1304 (Fed. Cir. 1992)...............................................................................13, 15

*Mid-Continental Cas. Co. v. Basdeo*,
    742 F.Supp.2d 1293 (S.D. Fla. Sept. 27, 2010) ............................................................9

*Mills v. Holcomb*,
    389 So. 2d 223 (Fla. 5th DCA 1980) ..................................................................................13, 14

*Multiphone Latin America, Inc. v. Millicom International Cellular, S.A.*,
    2025 WL 2480412 (S.D. Fla. Aug. 28, 2025)..........................................................................8

*National Equestrian League, LLC v. White*,
    2021 WL 5890391 (S.D. Fla. Oct. 26, 2021)..........................................................................17

*Petrella v. Metro-Goldwyn-Mayer, Inc.*,
    572 U.S. 663 (2014)................................................................................................................12

*Richmond Manor Apts., Inc. v. Certain Underwriters at Lloyd's London*,
    2011 WL 13175618 (S.D. Fla. Feb. 28, 2011) .......................................................................15

*Rodeway Inns of America v. Alpaugh*,
    390 So. 2d 370 (Fla. 2d DCA 1980) ......................................................................................16

*SCA Hygiene Prod. Aktiebolag v. First Quality Baby Prod., LLC*,
    137 S. Ct. 954 (2017)..............................................................................................................12

*Ticktin v. Kearin*,
    807 So. 2d 659 (Fla. 3d DCA 2001) ......................................................................................11

*Vanguard Plastic Surgery, PLLC v. UnitedHealthcare Ins. Co.*,
    2022 WL 19037216 (S.D. Fla. Feb. 9, 2022) ..........................................................................4

*Vaughan v. Emerald Coast RV Center, LLC*,
    2019 WL 13227254 (M.D. Fla. March 7, 2019)...................................................................9, 10

*Villas of Lake Jackson, Ltd. v. Leon County*,
    884 F.Supp. 1544 (N.D. Fla. Feb. 10, 1995)...........................................................................6

*Winans v. Weber*,
    979 So. 2d 269 (Fla. 2d DCA 2007) ......................................................................................10

*XP Global, Inc. v. AVM, L.P.*,
    2016 WL 4987618 (S.D. Fla. Sept. 19, 2016) .........................................................................8

**Statutes**

Fla. Stat. § 95.11(2)(b)..............................................................................................................7, 12

**Other Authorities**

RESTATEMENT (SECOND) OF CONTRACTS § 17 (1981)........................................................................4

<u>**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**</u>

Plaintiff, GARY FELSHER (the "Plaintiff" or "Mr. Felsher"), pursuant to Federal Rule of Civil Procedure 56(a), hereby moves for entry of an order granting Plaintiff summary judgment against Defendant, W. MONSEES STUBBS, JR. ("Defendant" or "Mr. Stubbs").[1]

## I. <u>INTRODUCTION</u>

This is a straightforward breach of contract action arising from Defendant's self-admitted failure to fulfill his most basic contractual obligations. As a result of Defendant's admissions, there are no genuine issues of material fact sufficient to prevent this Court from entering summary judgment and granting Mr. Felsher the clear contractual remedy agreed to by the parties.

In the early 1990's Defendant came to Mr. Felsher with a list of potential mortgages and real property investments then owned by NationsBank (the "Properties"). The Properties presented an attractive investment opportunity to Mr. Felsher who had decades of experience in the acquisition of commercial real estate. Prior to making the multi-million-dollar investment, however, Mr. Felsher saw it necessary to obtain Mr. Stubbs' agreement to manage and operate the Properties to justify Defendant's promotional interest. Therefore, Mr. Felsher and Defendant discussed and negotiated the terms of a basic partnership agreement which they ultimately executed on December 30, 1992 (the "F&S Agreement"). Therein, and in consideration for Defendant's agreement to manage and operate the Properties, Defendant was given, *inter alia,* a 50/50 ownership interest in the Class B Shares (the "Incentive Shares" or "Class B Shares") and a 50/50 ownership in the General Partner Share.

Mr. Felsher, Defendant, and numerous third-party investors then entered into a Partnership Agreement (the "FGHP Agreement")[2] which obligated Defendant to "devote to the conduct of the

---

[1] Pursuant to Federal Rule of Civil Procedure 1.510(c)(5), Mr. Felsher adopts and incorporates by reference as though set forth fully herein the undisputed material facts set forth in his contemporaneously filed Statement of Undisputed Material Facts in Support of Plaintiff's Motion for Summary Judgment (the "Statement of Facts" or "SOF").

[2] On September 22, 1992, Mr. Felsher formed FGHP Capital Limited Partnership (the "Partnership"). (SOF ¶ 1.)

business of the Partnership such of his time and attention as shall be necessary or appropriate to accomplish the purposes, and to conduct properly, diligently and prudently the business, of the Partnership." (SOF ¶ 11.) While Defendant fulfilled his obligations under the F&S Agreement and the FGHP Agreement for years, Defendant has and continues to materially breach the F&S Agreement by failing to devote any time and/or attention to the business of the Partnership. (*Id.* at ¶¶ 37–38.) Critically, Defendant himself admitted that in the last two (2) years, he has not been personally involved in managing any of the Partnership's Properties and, at present, is not meaningfully devoting any time to managing the Partnership's Properties, which is a clear breach of the F&S Agreement. (*Id.* at ¶¶ 29, 32.)

As a result of Defendant's breach, and as provided by the plain terms of the agreements at issue, Defendant is required to (i) sell half of his Incentive Shares to a replacement general partner unrelated to Felsher for $1.00, (ii) resign as an officer and director of all entities in which he is a joint general partner with Mr. Felsher (the "Garmont Capital Entities"), and (iii) assign his shares in all Garmont Capital Entities to Mr. Felsher for $1.00, retaining only his economic interest. Mr. Felsher does not seek in this action to divest Defendant of his Class A Shares or the other half of his Class B Shares. (*Id.* at ¶¶ 35, 44.)

In response, Defendant has asserted seven (7) affirmative defenses, none of which prevent this Court from entering summary judgment. Defendant's equitable affirmative defenses fail both as a whole on the basis that Defendant himself engaged in inequitable conduct and thus lacks clean hands necessary to invoke equitable affirmative defenses and individually on their merits. Defendant's only remaining non-equitable affirmative defense, *i.e.,* the statute of limitations, fails as the undisputed material facts establish that Mr. Felsher's claim was made within Florida's five (5) year statute of limitations and upon application of the continuing breach doctrine. As a result, Mr. Felsher respectfully requests this Court enter summary judgment in his favor.

## II.  LEGAL STANDARD ON A MOTION FOR SUMMARY JUDGMENT

Under Federal Rule of Civil Procedure 56(a), summary judgment "is appropriate only if the movant shows that there is no genuine issue as to any material fact and the movant is entitled

to judgment as a matter of law." *Chabad of Key Biscayne Inc. v. Scottsdale Ins. Co.*, 631 F. Supp. 3d 1250, 1253 (S.D. Fla. Sept. 28, 2022) (Gayles, J.). The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported summary judgment motion. *Id.*

## III.   ARGUMENT AND MEMORANDUM OF LAW

### A.   DEFENDANT MATERIALLY BREACHED THE F&S AGREEMENT

Mr. Felsher's Complaint contains a single cause of action for breach of contract. (Compl. at p. 6; SOF ¶ 43).  "To constitute a material breach, a party's nonperformance of a contract must be such as to go to the essence of the contract; it must be the type of breach that would discharge the injured party from further contractual duty on his part. . ." *MDS (Canada), Inc. v. Rad Source Technologies, Inc.,* 822 F.Supp.2d 1263, 1298 (S.D. Fla. Sept. 30, 1992) (citations omitted). "Traditional contract  interpretation principles  make contract interpretation a  question  of  law, decided by reading the words of a contract in the context of the entire contract and construing the contract to effectuate the parties' intent." *In re Appliance No., Inc.,* 568 B.R. 843, 848 (Bankr. M.D. Fla. March 20, 2017).  "Under general principles of contract law, we look to the four corners of the instrument to determine the intent of the parties." *Leverso v. SouthTrust Bank of AL., Nat. Assoc.,* 18 F.3d 1527, 1534 (11th Cir. 1994) (citations omitted); *see GE Medical Systems S.C.S. v. SYMX  Healthcare  Corp.,*  2021  WL  821433,  \*14  (S.D.  Fla.  March  4,  2021) ("Contract interpretation begins with a review of the plain language of the agreement because the contract language is the best evidence of the parties' intent at the time of the execution of the contract."). "[T]he main canon of interpretation of a contract, is to ascertain what the parties themselves meant and understood." *In re Bingham Bridge,* 70 U.S. 51, 76 (1865).

The F&S Agreement is a concise six-page contract executed for purposes of memorializing the respective rights, responsibilities, and obligations of the parties, particularly when it came to the management and operation of the Partnership and the Properties. (SOF ¶ 4.)  In consideration for Defendant's commitment of the time and effort necessary to comply with paragraph 6.3(a) of the FGHP Agreement, Defendant was given 1/2 of the 40% Class B shares of the Partnership (*i.e.*,

3

Incentive Shares), a 50% interest in the General Partner Share, a $100,000 annual salary, and additional benefits. (*Id*. at ¶ 8.)  The FGHP Agreement, in turn, required Defendant to "devote to the conduct of the business of the Partnership such of his time and attention as shall be necessary or appropriate to accomplish the purposes, and to conduct properly, diligently and prudently the business, of the Partnership." (*Id.* at ¶ 11.) The F&S Agreement made clear that Mr. Felsher was "relying on Stubbs' availability and commitment [to the management and operation of the Properties] as Felsher's inducement to enter into the Transaction." (*Id.* at ¶ 7.)  Mr. Felsher and Defendant executed the F&S Agreement (*id.* at ¶ 2.) and there is no dispute that the F&S Agreement has long been a valid, enforceable contract. *See Vanguard Plastic Surgery, PLLC v. UnitedHealthcare Ins. Co.,* 2022 WL 19037216, *3 (S.D. Fla. Feb. 9, 2022) ("the formation of a contract requires a bargain in which there is a manifestation of mutual assent to the exchange and consideration.") (citing RESTATEMENT (SECOND) OF CONTRACTS § 17 (1981)).

The undisputed material facts establish that Defendant has breached the F&S Agreement. In the last five (5) years, Defendant has not been involved in overseeing management of any of the Partnership's Properties. (SOF ¶ 27.)  In the last two (2) years, Defendant has not personally been involved in managing the Partnership's Properties. (*Id.* at ¶ 29.) Further still, as of today, Defendant is "not in a meaningful way" devoting any time to the management of the Partnership's Properties. (*Id.* at ¶ 32.)  Defendant's willful failure to perform constitutes a clear material breach of the F&S Agreement.  *See American Pacific Dairy Products v. Siciliano,* 235 F.2d 74, 81 (9th Cir. 1956) (finding that where partnership agreement required defendant to "devote such time, as may be mutually agreed upon between co-partners, together with his skill and energy, to the best interests of the business of the co-partnership[,]" partner's act of leaving the country ten (10) days after business opened for a period of two years and communicating with business employees only "two or three times" during that period constituted a breach of contract.) The *Siciliano* case is persuasive authority and factually indistinguishable from the instant case.

Defendant also breached the F&S Agreement by failing (i) to take such steps and actions as are necessary to resign as an officer and director of the Garmont Capital Entities; (ii) to assign

4

his shares in all Garmont Capital Entities to Mr. Felsher for $1.00, retaining only his economic interest in such entities; and (iii) to sell 50% of his Incentive Shares to a replacement general partner for $1.00. Such relief was expressly provided by the F&S Agreement in the event Defendant failed to challenge Mr. Felsher's allegations of breach within the October 8, 2024 Notice of Breach (the "Notice of Breach"). (SOF ¶¶ 35–36.) Defendant took no action in response to the Notice of Breach, *i.e.,* he neither exercised his contractual rights to challenge that he was in breach, nor complied with the contractual remedies which he agreed to be bound by. (*Id.* at ¶ 39.) As a result, Defendant has materially breached the F&S Agreement and Mr. Felsher is entitled to summary judgment.

### B. <u>Defendant's Affirmative Defenses do not Preclude Entry of Summary Judgment</u>

Defendant's Answer and Affirmative Defenses asserts the following seven (7) affirmative defenses predicated on vague allegations of Mr. Felsher's purported knowledge of Defendant's "actions" and alleged failure to object to Mr. Stubbs' "actions" sooner: (1) Statute of Limitations; (2) Waiver; (3) Laches; (4) Ratification; (5) Set-Off; (6) Substantial Performance; and (7) Unconscionability (collectively, the "Affirmative Defenses"). (DE 6 at pp. 3–4.) None of Defendant's Affirmative Defenses have merit.

#### i. <u>Defendant's Equitable Affirmative Defenses All Fail as a Whole</u>

Defendant asserts numerous equitable Affirmative Defenses (*i.e.,* Nos. 2–7.) These Affirmative Defenses, however, fail on the basis that Defendant himself engaged in inequitable conduct and thus lacks clean hands as necessary to invoke equitable affirmative defenses. "It is an elementary proposition of equity jurisprudence that one who seeks equity must do equity; that one who comes into equity must come in with clean hands. Equity Courts have historically declined to grant equitable relief to one who seeks to enforce rights under a contract which he, himself, has breached." *Local Union No. 1055, Intern. Broth. of Elec. Workers, AFL-CIO v. Gulf Power Co.,* 182 F.Supp. 950, 953 (N.D. Fla. April 18, 1960). Stated differently,

> The 'clean hands' maxim and the equitable principle for which it stands signify that a litigant may be denied affirmative equitable relief by a court of equity on the ground that his conduct has been inequitable, unfair, dishonest, fraudulent or deceitful as to the controversy in issue. This maxim refers to the acceptability, cleanliness and decency of the claim put forth and describes equity's practice of refusing an equitable remedy to enforce a claim that is itself inequitable, unconscionable or tainted by fraud or misrepresentation.

*Villas of Lake Jackson, Ltd. v. Leon County,* 884 F.Supp. 1544, 1569 (N.D. Fla. Feb. 10, 1995).

Here, Defendant engaged in inequitable conduct and such actions demonstrate a lack of clean hands.  For example, Defendant understood at the time he executed the F&S Agreement that Mr. Felsher expected him to devote the time and effort necessary to manage the Properties. (SOF ¶ 9.)  Indeed, Mr. Felsher made clear to Defendant that he expected him to manage the Properties. (*Id.* at ¶ 10.)  Moreover, the stated purpose of the Partnership was "to ***operate***, ***manage*** and sell or ***otherwise realize the value*** of such debt interests and properties, either directly or by means of ownership of limited partnership interests. . ." (*Id.* at ¶ 12) (emphasis added.)  As evidence of his understanding, many years after executing the F&S Agreement, in 2010 and 2011, Defendant reaffirmed having ongoing responsibilities to "commit the time and effort necessary to manage the portfolio" and a "fiduciary obligation" to the Partnership. (*Id.* at ¶¶ 15–16.)

Despite his active management for many years, admitted responsibilities, and fiduciary obligation to the Partnership and Mr. Felsher, Defendant "stepped back" from management of the Partnership's operations over the course of several years. (*Id.* at ¶ 17.)  Defendant never informed Mr. Felsher that he was no longer providing management services in connection with the Partnership's Properties. (*Id.* at ¶ 18.) Defendant's lack of involvement has evolved to such an extent that in the last five (5) years, Defendant has not been involved in overseeing management of any of the Partnership's Properties. (*Id.* at ¶ 27.)  In the last two (2) years, Defendant has not personally been involved in managing the Partnership's Properties. (*Id.* at ¶ 29.)  As of today, Defendant is "not in a meaningful way" devoting <u>any</u> time to the management of the Partnership's Properties. (*Id.* at ¶ 32.)  Importantly, despite the above-noted actions, Defendant has made no

effort to communicate with Mr. Felsher in the past five (5) years to be involved in management of the Partnership's operations. (*Id.* at ¶ 30.)

Instead, Defendant has been involved in the formation of other unrelated entities and investments. (*Id.* at ¶¶ 24–25.) Through such entities, Defendant has invested millions of dollars in real property, some in the same general location as some of the Properties owned by the Partnership. (*Id.* at ¶ 25.) By late 2018, Defendant was dedicating "a good 1,000 hours annually" to the management and operation of these unrelated entities despite never informing Mr. Felsher of such actions. (*Id.* at ¶ 24.) This admission by Defendant shows what it takes to conduct the business of an entity owning commercial real estate with many dozens of tenants and other business-related issues.

As a result, Defendant lacks clean hands and may not invoke the equitable affirmative defenses numbered 2–7.

### ii.  <u>Defendant's Affirmative Defenses Independently Lack Merit</u>

In addition to the above-noted deficiencies, each of Defendant's Affirmative Defenses fail substantively when the law is applied to the facts of this case.

### 1.  Statute of Limitations

Defendant's First Affirmative Defense is based on a five-year statute of limitations. (DE 6 at p. 3; *see* Fla. Stat. § 95.11(2)(b).)

The undisputed material facts establish that Mr. Felsher became aware around 2020 – 2021 that Defendant's non-performance under the FGHP Agreement and F&S Agreement had evolved to the extent he was no longer performing most, if not all the duties he was required to perform. (SOF ¶ 33.) On October 8, 2024, Mr. Felsher sent Defendant a formal written notice of breach of contract (the "Notice of Breach") (*Id.* at ¶ 37.) Mr. Felsher filed this action on December 18, 2024. (DE 1 at Ex. B). Therefore, Mr. Felsher's claim was made within the five (5) year statute of limitations.

Even assuming, *arguendo*, that Mr. Felsher's claim was made outside the statute of limitations (which it was not), courts routinely recognize application of the continuing breach

doctrine in this instance.  "Under the continuing breach doctrine, a cause of action for breach of a contract does not begin to accrue upon the initial breach; rather, on contracts providing serial performance by the parties, accrual of a breach of contract cause of action commences upon the occurrence of the last breach or upon termination of the contract." *XP Global, Inc. v. AVM, L.P.,* 2016 WL 4987618, *3 (S.D. Fla. Sept. 19, 2016) (Denying defendant's motion to dismiss on statute of limitations grounds upon application of the continuing breach doctrine) (citations omitted).[3] For example, in *City of Quincy v. Womack*, 60 So. 3d 1076, 1078 (Fla. 1st DCA 2011) the First District Court of Appeal affirmed the trial court's entry of judgment in the plaintiff's favor and held that where the parties' contract called for "continuing maintenance and repairs to an existing dam and spillway[,]" the plaintiff's cause of action was not limited to the initial breach because of the continuing nature of the obligations under the contract and, therefore, the statute of limitations had not expired.  *Id.* at 1077.

Here, the FGHP Agreement required Defendant to "devote to the conduct of the business of the Partnership such of his time and attention as shall be necessary or appropriate to accomplish the purposes, and to conduct properly, diligently and prudently the business, of the Partnership." (SOF ¶ 11.)  Such obligations were continuous in nature as evidenced by Defendant's performance under the F&S and FGHP Agreements for many years and Defendant's September 15, 2011 letter to Mr. Felsher acknowledging "responsibilities to the Partnership" and "a fiduciary obligation to safeguard the assets of the Partnership." (*Id.* at ¶ 16.)  Moreover, the parties did not execute subsequent contracts and instead relied on the F&S and FGHP Agreements for the duration of their relationship. Lastly, neither contract contains an opt-out and/or renewal period, or in any way

---

[3] *See Grove Isle Ass'n v. Grove Isle Assocs., LLLP*, 137 So. 3d 1081, 1095-96 (Fla. 3d DCA 2014) ("where an obligation is continuing in nature, a party's ongoing nonperformance constitute[s] a continuing breach while the contract remain[s] in effect.") (citations omitted); *see Multiphone Latin America, Inc. v. Millicom International Cellular, S.A.,* 2025 WL 2480412, *4 (S.D. Fla. Aug. 28, 2025) (Denying defendant's motion to dismiss on statute of limitations grounds upon application of the continuing breach doctrine and stating "[a]s the parties recognize, the continuing violations doctrine provides that when breaches of a contract are ongoing, the statute of limitations generally does not begin to run until the termination of the contract.").

limits the timeframe of applicable performance. (*See generally* DE 1, Ex. B; *see* SOF ¶ 40 (citing Defendant's testimony that Mr. Felsher never relieved him of his duties.))

Accordingly, Mr. Felsher's claim was brought well within the five-year limitations period. And even if Defendant's breach occurred outside the limitations period, the continuing breach doctrine dictates that Mr. Felsher's cause of action did not accrue until the Notice of Breach on October 8, 2024.

### 2.    Waiver

Defendant's Second Affirmative Defense is waiver. (DE 6 at p. 3.) Here, Defendant alleges "[Mr.] Felsher has possessed actual knowledge of [Mr.] Stubbs's actions in accordance with the F&S Agreement and intentionally declined to object or otherwise take any affirmative action." (*Id.*) Defendant does not allege what Defendant's "actions" were which serves as the factual predicate for this defense, just that he generally performed "in substantially the same manner for many years." (*Id.*)

### a.    Defendant Cannot Satisfy the Elements of Waiver

"The party asserting waiver bears the burden of proof." *Vaughan v. Emerald Coast RV Center, LLC,* 2019 WL 13227254, *5 (M.D. Fla. March 7, 2019) (citations omitted). "The elements of waiver are: (1) the existence at the time of the waiver of a right, privilege, advantage, or benefit which may be waived; (2) the actual or constructive knowledge of the right; and (3) the intention to relinquish the right." *Mid-Continental Cas. Co. v. Basdeo,* 742 F.Supp.2d 1293, 1330 (S.D. Fla. Sept. 27, 2010) (citations omitted); *Leonardo v. State Farm Fire Cas. Co.*, 675 So. 2d 176, 179 (Fla. 4th DCA 1996). "The crux of the waiver doctrine rests upon conduct demonstrating an intent to relinquish a known right." *Mid-Continental Cas. Co.,* 742 F.Supp.2d at 1330 (citing *Ferry–Morse Seed Co. v. Hitchcock,* 426 So. 2d 958, 962 (Fla. 1983)).

To waive claims it is otherwise entitled to assert, "***the waiving party must possess all of the material facts*** . . ." *Mid-Continental Cas. Co.,* 742 F.Supp.2d at 1330 (citing *L.R. v. Dep't of Children & Families*, 822 So. 2d 527, 530 (Fla. 4th DCA 2002)) (emphasis added). Waiver may be express or implied by conduct, but waiver by conduct "must make out a clear case." *Fireman's*

*Fund Ins. Co. v. Vogel*, 195 So. 2d 20, 24 (Fla. 2d DCA 1967); *see In re Ferry,* 631 B.R. 790, 800 (M.D. Fla. July 13, 2021) ("A party's intent to waive its rights must be shown through 'unequivocal acts' and may not be 'inferred from doubtful and ambiguous [circumstances].'") (citations omitted). However, "there can be no waiver if the party against whom the waiver is invoked . . . was misled about the material facts." *Winans v. Weber,* 979 So. 2d 269, 274 (Fla. 2d DCA 2007). Further, "*[m]ere delay is insufficient to support a claim of waiver*." *Air Prods. Chem., Inc. v. Louisiana Land Exploration Co.*, 867 F.2d 1376, 1380 (11th Cir. 1989) (emphasis added).

The undisputed facts establish that Mr. Felsher never directly relieved Defendant of his contractual obligations. (SOF ¶ 40.) In the absence of an express waiver, Defendant must make out a clear case of waiver implied by conduct. *See In re Ferry,* 631 B.R. at 800. The facts of this case fall short of demonstrating that Mr. Felsher clearly and unambiguously exhibited an intention to relinquish the rights he now asserts at some prior unknown time. Indeed, Mr. Felsher's Notice of Breach to Defendant made clear that Mr. Felsher intended to exercise his contractual rights pursuant to the F&S Agreement (SOF ¶ 38.) Defendant is also unable to show that Mr. Felsher has benefited because Defendant concedes Mr. Felsher is "the only partner doing anything." (*Id.* at ¶ 34). Stated otherwise, Mr. Felsher has had to step in and perform Defendant's responsibilities in his absence to preserve the ongoing successful operation of the Partnership and its commercial Properties. (*Id.*)

<blockquote><b>b. Defendant's Affirmative Defense of Waiver Fails to Satisfy Two Additional Common Law Requirements</b></blockquote>

Defendant's Affirmative Defense of waiver also fails for two additional reasons. First, while mere delay is insufficient to support a claim of waiver, Defendant's Answer points to no conduct of Mr. Felsher beyond a mere delay in filing this action as evidence of waiver. (*See* DE 6 at p. 3.) Second, it is undisputed that Defendant never informed Mr. Felsher that "he was either unwilling or unable to service, maintain, manage, and/or operate the Properties." (SOF ¶ 18.) As a result, Defendant cannot possibly establish that Mr. Felsher possessed all the material facts as required to waive the claims he presently asserts. *See Vaughan v. Emerald Coast RV Center, LLC,*

10

2019 WL 13227254, *5 (M.D. Fla. March 7, 2019) (entering summary judgment in warranty dispute action in movant's favor on the basis that nonmovant "submit[ted] no evidence, through testimony, affidavit, or otherwise, to suggest that he placed [movant] or its authorized dealers on notice. . ." to substantiate affirmative defense of waiver). As a result, Mr. Felsher is entitled to summary judgment.

### 3.    Laches

Defendant's Third Affirmative Defense is laches. (DE 6 at p. 3.) Laches is as "an omission to assert a right for an unreasonable and unexplained length of time, under circumstances prejudicial to the adverse party." *Ticktin v. Kearin*, 807 So. 2d 659, 663 (Fla. 3d DCA 2001). "[A] defendant must demonstrate the presence of three elements in order to successfully assert laches as a defense: (1) a delay in asserting a right or a claim; (2) that the delay was not excusable; and (3) that there was undue prejudice to the party against whom the claim is asserted." *Kason Indus., Inc. v. Component Hardware Group, Inc.*, 120 F.3d 1199, 1203 (11th Cir. 1997).

"[P]rejudice results when there is a loss or injury to a person who relies on another person's voluntary failure to exercise a legal right." *Gaines v. Gaines,* 870 So. 2d 187, 190 (Fla. 4th DCA 2004). As a matter of law, "[a]ny harm demonstrated . . . must stem specifically from [Plaintiff's] delay in bringing suit, rather than from the consequences of an adverse decision on the merits, for prejudice does not arise merely because one loses what otherwise he would have kept. In other words, the [Defendant] must establish that they were made significantly worse off because [Plaintiff] did not bring suit as soon as it had the opportunity to do so." *Black Warrior Riverkeeper, Inc. v. U.S. Army Corps of Engineers,* 781 F.3d 1271, 1286 (11th Cir. 2015) (citations omitted) (internal quotations omitted). Florida courts routinely recognize that "[m]aterial prejudice can take the form of either evidentiary or economic prejudice." *See Apotex, Inc. v. UCB, Inc.,* 970 F.Supp.2d 1297, 1336 (S.D. Fla. Sept. 9, 2013) (overruled on other grounds); *see Ideal Image Dev. Corp. v. Idealaser Hair Removal Corp.,* 2019 WL 3890345, *4 (S.D. Fla. June 25, 2019) ("defendants can suffer economic prejudice or evidentiary prejudice.").

11

Evidentiary prejudice focuses on the prejudice to the defendant arising from the plaintiff's failure to file suit earlier. *See Equal Employment Opportunity Commission v. Dresser Indus., Inc.,* 668 F.2d 1199, 1203 (11th Cir. 1982) ("'Classic elements' of undue prejudice include unavailability of witnesses, changed personnel, and the loss of pertinent records.") (citations omitted). Economic prejudice, on the other hand, "arises when a defendant and possibly others will suffer the loss of monetary investments or incur damages which likely would have been prevented by earlier suit." *See Apotex, Inc.,* 970 F.Supp.2d at 1336 (citations omitted).

Defendant's Affirmative Defense of laches fails for numerous reasons.

### a.   Laches Does Not Apply Where a Claim was Filed Within the Statute of Limitations, Such as Here.

First, as a matter of law, the doctrine of laches may not be invoked to shorten the statute of limitations where a legislatively enacted statute of limitations exists. *See SCA Hygiene Prod. Aktiebolag v. First Quality Baby Prod., LLC*, 137 S. Ct. 954, 961 (2017) (holding that affirmative defense of laches cannot be applied to Patent Act which contains "a limitations period enacted by Congress" and stating "[l]aches is a gap-filling doctrine, and where there is a statute of limitations, there is no gap to fill.").[4] Because a legislatively enacted statute of limitations exists for a breach of contract claim under Florida law (*i.e.,* Florida Statute § 95.11(2)(b)) and Mr. Felsher's claim was asserted within the statute of limitations, Defendant's affirmative defense of laches fails. *See Health First, Inc. v. Hynes,* 2014 WL 12648552, *7 (M.D. Fla. Sept. 17, 2024) (granting plaintiff's motion for summary judgment as to multiple causes of action including breach of contract and stating, "[l]aches does not apply to [plaintiff's] claims because each is subject to a statute of limitations.") (citing Fla. Stat. § 95.11(2)(b)).

---

[4] *See Petrella v. Metro-Goldwyn-Mayer, Inc.,* 572 U.S. 663, 678 (2014) (holding that laches cannot be applied to claims filed within Copyright Act's 3-year limitations period and stating "laches is a defense developed by courts of equity; its principal application was, and remains, to claims of an equitable cast for which the Legislature has provided no fixed time limitation" and further that "laches should be limited to cases in which no statute of limitations applies.") (citations omitted).

### b.        Defendant Cannot Establish Evidentiary Prejudice

Second, Defendant cannot satisfy his burden to show evidentiary prejudice. With respect to evidentiary prejudice, all responsive, non-privileged documents and communications have been produced in full compliance with all Court Orders, including, *inter alia,* all emails within Defendant's email domain (MStubbs@pemcap.com) dating back to January 1, 2010—***more than fifteen (15) years' worth of correspondence***. Importantly, Defendant has not alleged spoliation of evidence in this action and any such argument would be entirely speculative. *See Baggett Bros. Farm, Inc. v. Altha Farmer's Co-op, Inc.,* 2008 WL 3979493, *5 (N.D. Fla. Aug. 21, 2008) (affirming bankruptcy court's decision approving creditor's secured claim, finding debtor's affirmative defense of laches without merit, and stating "[debtor's] complaint that it has been prejudiced in proving its objection due to the passage of time is speculative and therefore insufficient.") (citations omitted).[5]

### c.        Defendant Cannot Establish Economic Prejudice

Third, Defendant cannot establish that he suffered economic prejudice due to Mr. Felsher's purported delay in filing suit. To the contrary, Mr. Felsher's purported delay in filing suit inured to Defendant's benefit. More specifically, on February 11, 2022, Defendant received a $1,100,000 distribution from the Partnership which he would not have received had suit been filed sooner. (SOF ¶ 42, Ex. 13.) Defendant has also not invested capital in the Partnership in recent years, so any purported delay would not result in a loss of investment and/or damages to Defendant. Furthermore, it is undisputed that Defendant's performance of his obligations has evolved over time to the extent that in the last two (2) years, he has not been personally involved in managing any of the Partnership's Properties. (*Id.* at ¶ 29.)  Simply put, any material change in position

---

[5] *See Meyers v. Asics Corp.,* 974 F.2d 1304, 1308 (Fed. Cir. 1992) (reversing entry of summary judgment in defendants' favor on affirmative defense of laches and stating "Defendants also argue that they suffered evidentiary prejudice—loss of key witnesses and loss of documentary evidence. However, none of the defendants state exactly what particular prejudice it suffered from the absence of these witnesses or evidence. Conclusory statements that there are missing witnesses, that witnesses' memories have lessened, and that there is missing documentary evidence, are not sufficient.").

arising from Mr. Felsher's purported delay has militated in Defendant's favor. *See Mills v. Holcomb,* 389 So. 2d 223, 224 (Fla. 5th DCA 1980) (reversing entry of final judgment partitioning real property exclusively on grounds that trial court erred in holding suit was barred by doctrine of laches where, after conflict arose, appellant continued to make mortgage payments on appellee's behalf and stating "the delay was to appellee's benefit because appellant continued to make payments on the property.").

As a result, Defendant cannot invoke the affirmative defense of laches and Mr. Felsher is entitled to summary judgment.

### 4. Ratification

Defendant's Fourth Affirmative Defense is ratification. (DE 6 at pp. 3–4.) In support of this affirmative defense, Defendant alleges "[Mr.] Felsher has possessed actual knowledge of, and ratified, [Mr.] Stubbs's actions in accordance with the F&S Agreement." (*Id.*)

"Ratification is conduct that indicates an intention, with full knowledge of the facts, to affirm a contract which the person did not enter into or which is otherwise void or voidable." *Gibson v. Lynn University, Inc.,* 504 F.Supp.3d 1335, 1343 (S.D. Fla. Nov. 29, 2020) (citations omitted). Regarding the "full knowledge" requirement discussed in *Gibson,* the First District stated the following in *Bach v. Florida State Board of Dentistry,* 378 So. 2d 34, 36–37 (Fla. 1st DCA 1979):

> Before one may infer that a principal ratified an unauthorized act of his agent, the evidence must demonstrate that the principal was ***fully informed*** and that he ***approved of the act.*** *Ball v. Yates,* 158 Fla. 521, 29 So. 2d 729, 732 (1946). It is generally the rule that the doctrine of constructive knowledge does not apply to bring about ratification. The principal is charged only upon a showing of full knowledge, and not because he had notice which should have caused him to make inquiry, which in turn would have brought to his attention the knowledge of the unauthorized act of the employee. 2 Fla.Jur.2d, *Agency and Employment,* § 52 at page 204 (1977). There is no duty imposed upon the principal to make inquiries as to whether his agent has carried out his responsibilities. The principal 'has a right to presume that his agent has followed instructions, and has not exceeded his authority.' *Oxford Lake Line v. First Nat. Bank,* 40 Fla. 349, 24 So. 480, 483 (1898).

*Bach,* 378 So. 2d at 36–37 (emphasis added) (cleaned up).

14

The undisputed facts establish that Defendant **never** informed Mr. Felsher that he was no longer going to perform under the F&S Agreement or the Partnership Agreement or that "he was either unwilling or unable to service, maintain, manage, and/or operate the Properties." (SOF ¶ 18.) These facts alone defeat Defendant's Affirmative Defense of ratification. Moreover, has made no effort to communicate with Mr. Felsher in the past five (5) years to be involved in management of the Partnership's operations. (*Id.* at ¶ 29.) As a result, Defendant cannot possibly show that Mr. Felsher possessed all material facts necessary to ratify Defendant's conduct when Defendant himself cannot identify—let alone substantiate—when his services were no longer needed by the Partnership. (*Id.* at ¶ 22.)

Accordingly, Defendant's Affirmative Defense of ratification does not prevent entry of summary judgment in Mr. Felsher's favor.

### 5.      Set-off

Defendant's Fifth Affirmative Defense is set-off, through which he alleges "[a]ny amounts recoverable by [Mr.] Felsher in this action should be set-off by the sums earned as a result of [Mr.] Stubbs's performance." (DE 6 at p. 4.)

"The remedy of set-off 'allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding 'the absurdity of making A pay B when B owes A.'" *Richmond Manor Apts., Inc. v. Certain Underwriters at Lloyd's London,* 2011 WL 13175618, *8 (S.D. Fla. Feb. 28, 2011) (grating plaintiff's motion to dismiss and stating "[t]here are no allegations of any debts or transactions other than the same transactions and occurrences involved in Plaintiffs' suit—those transactions concerning the policies at issue.") (citations omitted).[6]

Defendant's attempt to invoke the affirmative defense of set-off fails on numerous grounds. First, Mr. Felsher does not seek damages in this action. Thus, there can be no set-off. Second, ***there is no existing mutual debt on behalf of Mr. Felsher inuring to the benefit of Defendant***; instead,

---

[6] "In a set-off, 'the mutual debts arise from different transactions.'" *Id.* (citations omitted); *see e.g., Kellogg v. Fowler, White, Burnett, Hurley, Banick & Strickroot, P.A.,* 807 So. 2d 669, 670 n. 2 (Fla. 4th DCA 2001) ("A set-off is an affirmative defense arising out of a transaction extrinsic to a plaintiff's cause of action.").

at bottom, Defendant's affirmative defense of set-off impermissibly requests this Court to find that Defendant's alleged performance entitles him to collect future distributions in perpetuity. Such a request is plainly improper, especially when Defendant has not been performing his contractual obligations to earn them.   Third, Defendant has failed to plead the existence of a transaction extrinsic to Mr. Felsher's cause of action, which is an essential element of the affirmative defense of set-off.

Additionally, Defendant's set-off defense is legally insufficient because it ignores the express terms of the parties' written agreement and the clear remedies available to Mr. Felsher under the F&S Agreement. The F&S Agreement unambiguously and expressly provides that upon Defendant's breach, he shall "sell to a replacement General Partner unrelated to [Mr.] Felsher for $1.00. . . 50% of [Mr.] Stubbs['] 'B' interest. . ." (SOF ¶ 35.) In contrast, Defendant's set-off defense attempts to circumvent this term by asking this Court to assign a substantially greater dollar value to Defendant's interest. Florida law expressly prohibits parties from asserting the affirmative defense of set-off where such a defense is belied by contract. *See Rodeway Inns of America v. Alpaugh,* 390 So. 2d 370, 372 (Fla. 2d DCA 1980) (affirming judgment in lessors favor and stating, "[t]here is no reasonable predicate for concluding that such a defense [of set off] has validity where, as here, the agreement of the parties specifically and unequivocally dictates precisely that result."). Mr. Felsher is therefore entitled to summary judgment notwithstanding Defendant's Affirmative Defense of set-off.

### 6.        Substantial Performance

Defendant's Sixth Affirmative Defense is substantial performance. (DE 6 at p. 4.) In support of his Sixth Affirmative Defense Defendant alleges that he performed "in a way that was so nearly equivalent to what was bargained for that it would be unreasonable to deny him rights to the partnership under the F&S Agreement." *Id.*

"Under Florida law, where a party's incomplete performance is nonetheless substantial, such that it is nearly equivalent to what was bargained for, the breaching promisor is entitled to recover the full contract price less whatever damages are suffered by the promisee on account of

16

the promisor's non-material breach." *Energy Smart Industry, LLC v. Morning View Hotels-Beverly Hills, LLC,* 112 F.Supp.3d 1330, 1335 (S.D. Fla. June 3, 2015). "The doctrine of substantial performance applies only where the promisor's nonperformance was unintentional." *Id.* (granting defendant's motion for summary judgment and stating "[h]ere, it is undisputed that ESI voluntarily chose not to complete four of the five phases of the project because Morning View would not make payments in advance of completion. Thus, the doctrine of substantial performance does not apply."); *National Equestrian League, LLC v. White,* 2021 WL 5890391, *6 (S.D. Fla. Oct. 26, 2021) (same) (citing *Lazovitz, Inc. v. Saxon Constr., Inc.*, 911 F.2d 588, 592 (11th Cir. 1990). Moreover, "[a] party seeking to recover for substantial performance may not be in material breach of the contract." *Lazovitz, Inc.,* 911 F.2d at 592; *see Measday v. Kwik-Copy Corp.,* 713 F.2d 118, 123-124 (5th Cir. 1983) ("if a party has committed a material breach his performance cannot be substantial.").

The undisputed material facts demonstrate that Defendant was obligated to perform his operational and management responsibilities through the liquidation of substantially all of the Properties, which has not yet occurred. (SOF at ¶¶ 13-40.) In the last five years, Defendant has not been involved in overseeing management of any of the Partnership's Properties. (*Id.* at ¶ 27.) In the last two (2) years, Defendant has not personally been involved in managing the Partnership's Properties. (*Id.* at ¶ 29.) Further still, as of today, Defendant is "not in a meaningful way" devoting any time to the management of the Partnership's Properties. (*Id.* at ¶ 32.) Simply put, Defendant is in material breach of the F&S Agreement and he has not substantially performed his obligations which have instead been passed on to Mr. Felsher slowly over time. As a result, Defendant may not invoke the doctrine of substantial performance.

Additionally, it is well established that "[t]he doctrine of substantial performance applies only where the promisor's nonperformance was unintentional." *Energy Smart Industry, LLC,* 112 F.Supp.3d at 1335. Here, the undisputed material facts establish that Defendant voluntarily (and therefore intentionally) "stepped back" from the Partnership's operations over the course of many years. (SOF at ¶ 17.) There is no record evidence to establish that Mr. Felsher knew of Defendant's

17

voluntary withdrawal from the Partnership's operations,[7] much less that Mr. Felsher actively prevented Defendant from performing such duties. Similarly, in *Energy Smart Industry, LLC,* 112 F.Supp.3d at 1335, the Southern District of Florida entered summary judgment in the movant's favor over the non-movant's objection and argument that the non-movant was "entitled to payment under the doctrine of substantial performance." *Id.* In entering summary judgment, the court stated "[h]ere, it is undisputed that [non-movant] voluntarily chose not to complete four of the five phases of the project because [movant] would not make payments in advance of completion. Thus, the doctrine of substantial performance does not apply." *Id.*

As a result, Defendant's Affirmative Defense of substantial performance fails and cannot prevent entry of summary judgment in Mr. Felsher's favor.

### 7.      Unconscionability

Defendant's Seventh and final Affirmative Defense is unconscionability. (DE 6 at p. 4.) "In order to obtain a ruling that a contract provision is unconscionable, a party must demonstrate both procedural and substantive unconscionability. Procedural unconscionability concerns the manner in which the contract is entered, whereas substantive unconscionability looks to whether the contractual terms are unreasonable and unfair." *Branco v. Southern Operations, LLC,* 2018 WL 4410055, *7 (S.D. Fla. July 19, 2018) (citations omitted) (internal quotations omitted). "The procedural component of unconscionability relates to the manner in which the contract was entered, and it involves consideration of such issues as the relative bargaining power of the parties and their ability to know and understand the disputed contract terms." *In re Colony Beach & Tennis Club Ass'n, Inc.,* 454 B.R. 209, 217 (M.D. Fla. July 27, 2011). Substantive unconscionability exists where "the contract terms themselves are so outrageously unfair as to shock the judicial

---

[7] (*See* SOF at ¶ 18) ("The Defendant never informed Mr. Felsher that he was no longer providing management services in connection with the Partnership's Properties.").

conscience." *FL-Carrollwood Care, LLC v. Gordon*, 72 So. 3d 162, 165 (Fla. 2d DCA 2011) (citations omitted).[8]

The facts of this case fall well short of satisfying either element. Defendant cannot dispute that the F&S Agreement was negotiated at arm's length between sophisticated parties with ample opportunity to review, negotiate, and reject terms. Critically, Defendant understood at the time he executed the F&S Agreement that Mr. Felsher expected him to devote the time and effort necessary to manage the Properties. (*Id.* at ¶ 9.) Nothing in the agreements is "outrageously unfair" or "shock the judicial conscience." As a practical matter, Defendant waited decades to allege that the F&S Agreement is unconscionable, doing so only after he was sued for breach.

Substantively, the terms of the F&S Agreement are far from outrageously unfair; instead, and in consideration for his devotion of the time and effort necessary to manage the Properties, Defendant was given 1/2 of the 40% Class B shares of the Partnership (*i.e.*, Incentive Shares), a 50% interest in the General Partner Share, a $100,000 annual salary, and other benefits. (*Id.* at ¶ 8.)[9] Simply put, the F&S Agreement is neither procedurally nor substantively unconscionable. The fact that the Agreement provides Mr. Felsher with a defined remedy in the event of Defendant's breach—one that confers no financial benefit on Mr. Felsher[10]—does not render the provision oppressive or unconscionable. Rather, it reflects the parties' express intent to ensure a functional General Partner responsible for operating and managing the Properties.

As a result, Mr. Felsher is entitled to summary judgment on Defendant's Affirmative Defense of unconscionability.

---

[8] A substantively unconscionable contract is a contract which no man in his senses "not under delusion would make on the one hand, and as no honest and fair man would accept on the other." *Hume v. United States,* 132 U.S. 406, 415 (1889).

[9] Through such interest Defendant has received in excess of $16,000,000.00 in distributions from the Partnership. (SOF at ¶ 42.)

[10] As set forth above, there is no economic benefit to Mr. Felsher. Defendant retains the economic interest in the General Partner share, and the B Shares subject to divestment are transferred to a third party unrelated to Mr. Felsher. The obvious purpose of this structure was to incentivize Defendant's continued performance of the necessary work; if Defendant chose to discontinue that work, he would forfeit only the sweat equity tied to his ongoing obligations. Unfortunately, Mr. Felsher was forced to bring this action because Defendant wants to have his cake and eat it too.

## IV.  CONCLUSION

**WHEREFORE**, Plaintiff, GARY FELSHER respectfully requests the Court enter summary judgment in his favor and against Defendant, W. MONSEES STUBBS, JR. together with any such other and further relief that the Court deems just and proper.

Dated:  December 17, 2025                                    Respectfully submitted,

**GREENBERG TRAURIG, P.A.**

777 South Flagler Drive., Suite 300
East West Palm Beach, FL 33401
Telephone: (561) 650-7900
Facsimile:  (561) 655-6222

By:    */s/ Robert R. Kane III*
**MARK F. BIDEAU, ESQ.**
Florida Bar No. 564044
bideaum@gtlaw.com
whitfieldd@gtlaw.com
WPBLitDock@gtlaw.com
**ROBERT R. KANE III, ESQ.**
Florida Bar No. 99488
Robert.Kane@gtlaw.com
whitfieldd@gtlaw.com
**COREY A. GROSS, ESQ.**
Florida Bar No. 1032362
Corey.Gross@gtlaw.com
sandra.famadas@gtlaw.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 17, 2025, I served a true and correct copy of this Motion for Summary Judgment via electronic mail upon its counsel of record, Spencer Keyser, Esq., at all email addresses designated by him in the ECF/CM e-filing portal.

By:    */s/ Robert R. Kane III*
ROBERT R. KANE III, ESQ.

20