**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

**Case No.: 25-cv-80071-REINHART**

GARY FELSHER,

      Plaintiff,

v.

W. MONSEES STUBBS, JR.,

      Defendant.

_____/

**PLAINTIFF'S STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff, GARY FELSHER (the "Plaintiff" or "Mr. Felsher"), by and through his undersigned counsel and pursuant to Federal Rule of Civil Procedure 56(a) and Southern District Local Rule 56.1(a)(1), hereby serves the following factual positions in support of his contemporaneously filed Motion for Summary Judgment.

**I.      STATEMENT OF UNDISPUTED FACTS**

1.      On September 22, 1992, Mr. Felsher formed FGHP Capital Limited Partnership (the "Partnership") pursuant to a Certificate of Limited Partnership filed with the State of Delaware.  A true and correct copy of the Partnership's Certificate of Limited Partnership is attached as **Exhibit 1**.

2.      On December 30, 1992, Mr. Felsher and W. Monsees Stubbs, Jr. ("Mr. Stubbs" or "Defendant") entered into a written agreement (the "F&S Agreement"). (DE 1 at Ex. A,[1] ¶ 9; DE 6, ¶ 9.)

---

[1] Docket entry No. 1 is Defendant's Notice of Removal dated January 17, 2025.  A copy of the Plaintiff's Complaint dated December 18, 2024, is attached to Defendant's Notice of Removal as Exhibit B.  A copy of the F&S Agreement and FGHP Agreement dated January 8, 1993 (the

1

3.      The F&S Agreement was entered in contemplation of the admission of Defendant and numerous third-party investors into the Partnership. To that end, the F&S Agreement expressly stated "[Mr.] Felsher and related persons or entities will be investing at least $5,550,000 and [Mr.] Stubbs will be investing $500,000." (DE 1 at Ex. A, p. 1.)

4.      The F&S Agreement was fully negotiated and executed for purposes of memorializing the respective rights, responsibilities, and obligations of Mr. Felsher and Defendant, as well as the benefits accruing to Defendant such as his incentive shares, a salary, payment of expenses, draws, and insurance proceeds. The F&S Agreement focuses on the management and operation of the Partnership and the portfolio of debt interests and real property to be acquired from NationsBank of North Carolina, N.A., NationsBank of South Carolina, N.A., and NationsBank of Florida, N.A. (the "Properties") shortly thereafter. (*See id.* at pp. 1–6; *see id.* at Ex. B, ¶¶ 1.3 (titled "Character of Business"), 6.3 (titled "Powers of General Partner").)

5.      The F&S Agreement provided that "[i]f Stubbs fails to comply with the terms of 6.3(a) of the FGHP Agreement relating to the time and effort he must provide to the transaction on behalf of the Partnership . . ." Mr. Felsher would be entitled to the relief as described in the F&S Agreement. (DE 1 at Ex. A, ¶ 6.) Consistent with its purpose, paragraph 6.3(a) of the FGHP Agreement, in turn, required Defendant to "devote to the conduct of the business of the Partnership such of his time and attention as shall be necessary or appropriate to accomplish the purposes, and to conduct properly, diligently[,] and prudently the business, of the Partnership." (*Id.* at Ex. B, ¶¶ 1.3, 6.3(a).)

---

"FGHP Agreement") are attached to the Plaintiff's Complaint as Exhibits A and B, respectively. As a result, and to avoid confusion, citations to "DE 1 at Ex. A" refer to F&S Agreement; likewise, citations to "DE 1 at Ex. B" refer to the FGHP Agreement.

ACTIVE 716281438v14

6.      The F&S Agreement made clear that **"Felsher will not make the investment unless Stubbs agrees to make the commitment of time and effort described in this Agreement."** (*Id.* at Ex. A, p. 1.) (emphasis added).

7.      The F&S Agreement also made clear that "Stubbs acknowledges that Felsher is relying on Stubbs' availability and commitment as Felsher's inducement to enter into the Transaction." (*Id.* at ¶ 6.)  As noted above, Defendant's commitment to the management and operation of the Properties required him to "devote to the conduct of the business of the Partnership such of his time and attention as shall be necessary or appropriate to accomplish the purposes, and to conduct properly, diligently[,] and prudently the business, of the Partnership." (*Id.* at Ex. B, ¶ 6.3(a).)

8.      In consideration for his devotion of the time and effort necessary to manage the Properties, Defendant was given 1/2 of the 40% Class B shares of the Partnership (*i.e.*, Incentive Shares) and a 50% interest in the General Partner and other benefits accruing to him. (DE 1 at Ex. A, ¶¶ 1, 2; Ex. B, ¶ 1.3 and Article 6.)

9.      Defendant understood at the time he executed the F&S Agreement that Mr. Felsher expected him to devote the time and effort necessary to manage the Properties. A true and correct copy of Defendant's deposition transcript is attached as **Exhibit 2** at 129:21-25.)

10.     Mr. Felsher made clear to Defendant at the time that he expected Defendant himself to manage the Properties.  (*Id.* at 142:10-13.)

11.     On January 8, 1993, Mr. Felsher, Defendant, and numerous third-party investors entered into a Partnership Agreement—the FGHP Agreement. (DE 1 at Ex. B; *see* DE 6, ¶ 11.) Paragraph 6.3(a) of the FGHP Agreement states:

> Stubbs agrees that, as an officer of the General Partner, for a period of one year following the first closing at which Class A Limited Partners are admitted into the

3

Partnership, he shall devote substantially all of his business time and energies to the business of the Partnership. ***Thereafter, as an officer of the General Partner, Stubbs shall devote to the conduct of the business of the Partnership such of his time and attention as shall be necessary or appropriate to accomplish the purposes, and to conduct properly, diligently and prudently the business, of the Partnership***.

(DE 1 at Ex. B, ¶ 6.3(a)) (emphasis added).

12.    Pursuant to the FGHP Agreement, the stated purpose of the Partnership was "to **operate, manage** and sell or otherwise realize the value of such debt interests and properties, either directly or by means of ownership of limited partnership interests. . ." (*Id.* at Ex. B, p. 2.) (emphasis added).

13.    The agreements read in tandem make clear that Mr. Felsher would not have agreed to give Defendant 1/2 of the 40% Class B shares of the Partnership (*i.e.*, Incentive Shares) or a 50% interest in the General Partner (the economic benefit of which Defendant gets to retain) unless Defendant expressly agreed to devote the time and effort necessary to manage the assets of the Partnership until "the liquidation of substantially all of the Assets involved in the Transaction." (*Id.* at Ex. A, p. 1 and ¶ 6; *id.* at Ex. B, ¶ 1.3 and Article 6 (titled "Management"))

14.    After executing the FGHP Agreement, Defendant testified he dedicated such of his time and attention as was necessary or appropriate to accomplish the purposes of the Partnership and to conduct properly, diligently, and prudently the business of the Partnership for many years. (*See* **Ex. 2** at 134:9-135:15.)

15.    On August 16, 2010, in recognition of his responsibilities to the Partnership and continuing performance under the F&S Agreement and the FGHP Agreement, Defendant drafted and delivered a letter to Mr. Felsher which included the following statement:

4

ACTIVE 716281438v14

## PEMBROKE CAPITAL LLC

TO:  GARY FELSHER

FROM:  MONTE STUBBS

SUBJECT:  PEMBROKE EXPENSES

DATE:  8/16/2010

As we were approaching the closing of the NationsBank portfolio, you pulled me into Marty Edelman's office to ensure that I would commit the time and effort necessary to manage the portfolio. This effort was something which at that point in your life you did not want to undertake. You stated at that time that "you can do this from anywhere, from the slopes of Aspen, but you must commit to do it." From that conversation, we entered into the attached agreement.

(A true and correct copy of the August 16, 2010 letter is attached as **Exhibit 3)**.

16.     On September 15, 2011—approximately eighteen (18) years after executing the FGHP Agreement—Defendant drafted and delivered yet another letter to Mr. Felsher wherein he acknowledged "I have a fiduciary obligation to safeguard the assets of the Partnership" and further stated "I intend to fulfill my responsibilities to the Partnership." (A true and correct copy of the September 15, 2011 letter is attached as **Exhibit 4)**.

17.     Despite his responsibilities and fiduciary obligation to the Partnership, thereafter, Defendant admitted that he slowly "stepped back" from the Partnership's operations over the course of many years. (*See* **Ex. 2** at 138:4-13; 176:21-177:6.)

18.     Defendant never informed Mr. Felsher that he was no longer providing the necessary management or operating services in connection with the Partnership's Properties. (*Id.*

at 174:14-17; *see also* Defendant's Responses to Mr. Felsher's First Set of Interrogatories attached as **Exhibit 5** at p. 6 (admitting he "never informed [Mr. Felsher] that 'he was either unwilling or unable to service, maintain, manage, and/or operate the Properties.'")).

19.      Instead, Defendant claims he relied upon an employee, Mr. Jay Benowitz ("Mr. Benowitz"), to take over all his required management and operating responsibilities. As stated by Defendant at his deposition, "[Mr. Benowitz] replaced me. . ." (**Ex. 2** at 137:13-15.)

20.      Mr. Benowitz, however, was hired "as a bookkeeper *without any experience in terms of real estate asset management*." (*Id.* at 175:16-24) (emphasis added.)

21.      Further, as an employee and not an owner/General Partner (*id.* at 135:23-136:2), Defendant acknowledges Mr. Benowitz lacks the authority to engage in management-level decisions, such as tenant selection (*id.* at 143:6-11), setting rates for tenant leases (*id.* at 137:10-12.), resolving legal issues, hiring property managers, or many other issues which can only be decided by an owner.

22.      Defendant could not recall when Mr. Benowitz took over his role to such an extent that his services were no longer needed. (*Id.* at 172:13-17.)

23.      On December 1, 2017, Defendant sent an email to Mr. Benowitz in which he stated, "I am pretty far removed from what's going on there [at the Partnership]." A true and correct copy of the December 1, 2017 email from Defendant to Mr. Benowitz is attached as **Exhibit 6** at p. 1.

24.      By late 2018, Defendant was—unbeknownst to Mr. Felsher—dedicating "a good 1,000 hours annually" to the management and operation of unrelated entities, which evidences the amount of time and effort necessary to manage similar properties. A true and correct copy of the November 10, 2018 correspondence from Defendant to himself is attached as **Exhibit 7**.

6

25.     Defendant never disclosed to Mr. Felsher that he was involved in the formation of other unrelated entities or that he was investing millions of dollars in real property, some in the same general location as the Properties owned by the Partnership. (*See* **Ex. 2** at 171:13-25; 90:12-19.)

26.     On May 30, 2019, Defendant assigned his 50% interest in Pembroke Capital, LLC ("Pembroke") to Mr. Felsher for $0.00.  A true and correct copy of the Assignment of Limited Liability Company Membership Interest & Assumption Agreement is attached as **Exhibit 8**. Pembroke serves as the Partnership's administrative and operating entity for the General Partner Garmont. (*See* **Ex. 2** at 78:12-79:7.)

27.     In the last five (5) years, Defendant has not been involved in (i) overseeing management of the Properties (*id.* at 132:22-133:5) or (ii) overseeing the work of Mr.  Benowitz, the Partnership's controller. (*Id.* at 136:3-6; 135:3-15.) In fact, Defendant himself characterized his relationship to the Partnership as merely that of an "interested party." (*Id.* at 94:3-7.)

28.     As further evidence of Defendant's complete lack of involvement in the Partnership's management and operations, Defendant has not received monthly operating and financial reports and made no effort to obtain the monthly operating and financial reports in the last five (5) years. (*Id.* at 172:4-12.) By definition, this information would be necessary for Defendant to perform his contractual obligations. (DE 1 at Ex. A, p. 1 and ¶ 6; *id.* at Ex. B, ¶ 1.3 and Article 6).

29.     In the last two (2) years, Defendant has not been personally involved in managing any of the Partnership's Properties and claims to have visited only two of the Properties during that time.  (**Ex. 2** at 93:25-94:2; 107:15-19.)

30.     Despite these failures, Defendant has made no effort to communicate with Mr. Felsher in the past five (5) years to be involved in management of the Partnership's operations. (*Id.* at 172:4-12.)

31.     Instead, Defendant alleges that he fulfilled his contractual obligations to both Mr. Felsher and the Partnership solely upon putting a general "infrastructure in place" to manage all the Properties without any further action on his part because it did not matter if he was "dead or alive." (*Id.* at 167:24-168:7.)

32.     Presently, Defendant concedes he is "not in a meaningful way" devoting any time to the management of the Partnership's Properties. (*Id.* at 162:21-163:3.)

33.     Around 2020 – 2021 Mr. Felsher became aware that Defendant's non-performance under the FGHP Agreement and F&S Agreement had evolved to the extent he was no longer performing most, if not all the duties he was required to perform. (A true and correct copy of Mr. Felsher's Amended Response to Defendant's First Set of Interrogatories is attached as **Exhibit 9**.)

34.     As a result of Defendant's ongoing material breach of the F&S Agreement, Mr. Felsher has been compelled to undertake the active management, operation, and decision making of the Partnership, in lieu of the limited oversight responsibilities assigned to him under the FGHP Agreement, so as to preserve the ongoing successful operation of the Partnership and its commercial Properties.  (*See* **Ex. 2** at 173:23-174:4 (admitting that Mr. Felsher is "the only partner doing anything. . ."); *see also* Compl. ¶ 19.))

35.     The F&S Agreement provides for a very clear remedy in this instance:

> If [Defendant] fails to comply with the terms of 6.3(a) of the FGHP Agreement relating to the time and effort he must provide to the transaction on behalf of the Partnership for any reason other than [Defendant's] death or disability, then [Defendant] shall a) resign as an officer and director of all General Partners, b) assign his shares of stock of each General Partner to Felsher for which Felsher shall pay to [Defendant] the amount of $1 . . . and c) sell to a replacement General Partner

8

unrelated to Felsher for $1.00. . . 50% of [Mr.] Stubbs['] 'B' interest if this event occurs after the return of funds described in (i) above. . .

(DE 1 at Ex. A, ¶ 6.)

36.     Moreover, upon notice of such breach by Mr. Felsher, the F&S Agreement provided as follows:

If [Mr.] Stubbs disagrees with [Mr.] Felsher's allegations that [Mr.] Stubbs Failed to comply with this paragraph 5, he shall have the right within 15 days of receipt of notice of such allegation to demand arbitration in New York City before a one person panel in accordance with the rules of the American Arbitration Association then prevailing.

(*Id.*)

37.     On October 8, 2024, in response to Defendant's material breach of the F&S Agreement, Mr. Felsher sent Defendant a Notice of Breach (the "Notice of Breach"). (A true and correct copy of the Notice of Breach is attached as **Exhibit 10**).

38.     The Notice of Breach stated as follows:

both under paragraph 6.3(a) of the Partnership Agreement and paragraph six of the December Agreement, you were required to handle the day-to-day management of the properties, with me providing an oversight role. At the outset you performed those services, but in more recent years you have failed to perform any of the required day-to-day management, leaving the entire burden to me. Under our agreements, your failure to perform the required day-to-day management results in the loss of 50% of your Class B interest in the partnership . . . We are going to adjust the books of the Partnership accordingly.

(*Id.* at p. 1.)

39.     Defendant took no action in response to the Notice of Breach. (**Ex. 2** at 179:21-25; 180:9-181:6.)

40.     Prior to receiving the Notice of Breach, Mr. Felsher never relieved Defendant of his obligations under the F&S Agreement or the FGHP Agreement. (*Id.* at 211:5-12.)

9

41.	Pursuant to the FGHP Agreement, Defendant currently claims a 1/2 interest in the 40% Class B Shares of the Partnership (*i.e.*, 20%) and a 0.929597% interest in the Class A Shares of the Partnership. (*See* Defendant's Second Amended Answers to Plaintiff's First Set of Interrogatories attached as **Exhibit 11**, p. 2; *see* Defendant's Fiscal Year 2024 Form 1065, Schedule K-1 attached as **Exhibit 12**.)

42.	Since its inception, Defendant has received in excess of $16,000,000 in distributions from the Partnership. A true and correct copy of distributions made to Defendant are attached as **Exhibit 13**.

43.	Through his single count Complaint for breach of contract, Mr. Felsher seeks a judgment (1) finding that Defendant has breached his obligations under the F&S Agreement; (2) directing Defendant to take such steps and actions as are necessary to resign as an officer and director of all entities in which he is a joint general partner with Mr. Felsher (the "Garmont Capital Entities") involved in managing and operating the Partnership and the Properties owned by the Partnership; (3) directing Defendant to assign his shares in all Garmont Capital Entities to Mr. Felsher for 1 dollar, retaining only his economic interest in such entities; and (4) declare that Defendant's Class B limited partnership interest is reduced by 50 percent (to 10 percent of the profits). (Compl. p. 6.)

44.	Mr. Felsher's Complaint does not seek an adjudication with respect to Defendant's ownership of his Class A limited partnership interest, nor does it seek to dispossess Defendant of his remaining Class B limited partnership interest (*i.e.,* 10% of the original 20%). Defendant also retains the economic benefit of his 50% General Partner share. The purpose of this action is simply to remove Defendant from the operation of the Partnership due to his nonperformance. (*See generally* Compl.)

ACTIVE 716281438v14

Dated:  December 17, 2025

Respectfully submitted,

**GREENBERG TRAURIG, P.A.**
777 South Flagler Dr., Suite 300 East
West Palm Beach, FL 33401
Telephone: (561) 650-7900
Facsimile:  (561) 655-6222

By:    */s/ Robert R. Kane III, Esq.*
    **ROBERT R. KANE III, ESQ.**
    Florida Bar No. 99488
    Robert.Kane@gtlaw.com
    whitfieldd@gtlaw.com
    **MARK F. BIDEAU, ESQ.**
    Florida Bar No. 564044
    bideaum@gtlaw.com
    WPBLitDock@gtlaw.com
    **COREY A. GROSS, ESQ.**
    Florida Bar No. 1032362
    Corey.Gross@gtlaw.com
    sandra.famadas@gtlaw.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on December 17, 2025, I served a true and correct copy of this Statement of Undisputed Material Facts via electronic mail upon its counsel of record, Spencer Keyser, Esq., at all email addresses designated by him in the ECF/CM e-filing portal.

By:    */s/ Robert R. Kane III*
    ROBERT R. KANE III, ESQ.

11

ACTIVE 716281438v14