**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No.: 25-cv-80071-REINHART**

GARY FELSHER,

     Plaintiff,

v.

W. MONSEES STUBBS, JR.,

     Defendant.

_____/

**PLAINTIFF'S DEPOSITION DESIGNATIONS OF**
**DEFENDANT W. MONSEES STUBBS, JR.**

Plaintiff, GARY FELSHER ("Plaintiff" or "Mr. Felsher"), hereby files his Deposition

Designations of Defendant, W. MONSEES STUBBS, JR.'S ("Defendant" or "Mr. Stubbs"), as

follows:

**Deposition of Mr. Stubbs taken on September 17, 2025**

| No. | Page & Line | Testimony | Objection(s) |
|-----|-------------|-----------|--------------|
| 1 | 90:12-19 | Q. Did you ever discuss with Mr. Felsher that you were investing millions of dollars in real estate properties in the same general locations as some of the FGHP properties?<br>A. No. And I don't know that there are—are you concerned about conflicts? I mean --<br>Q. I'm just asking a question.<br>A. To my knowledge, no. No. | |
| 2 | 93:25-94:2 | Q. Now, two years ago you were not involved in managing any of the FGHP properties, correct?<br>A. That's correct. | |
| 3 | 94:3-7 | Q. And two years ago you were not involved in overseeing the management of any of the FGHP properties, correct?<br>A. That is correct. But I'm a – certainly an interest party. | |
| 4 | 107:15-22 | Q. Okay. You said that you had visited the La Caretta rental property and the property in Tampa. In the last two years have you visited any other properties that are in the FGHP portfolio?<br>A. I don't believe so.<br>Q. And did you participate in the renegotiation of the La Caretta rental property in 2020?<br>A. No. | |

1

| No. | Page & Line | Testimony | Objection(s) |
|---|---|---|---|
| 5 | 120:2-13 | Q. And do you recall discussions with Mr. Felsher that Mr. Felsher did not want to be involved in the management of the portfolio? MR. KEYSER: Object to the form. You can answer. A. Yes. I mean, that – that was not his role and he -- you know, he had a -- he had a good -- good comfortable life. He didn't want to get, you know, drug into the weeds. That was understandable. That was -- his job was providing capital, my job was to make money with it. | |
| 6 | 122:11-14 | Q. That was good – that, as between the two of you, that was going to be your job, he was going to bring in the money? A. That's correct. | |
| 7 | 123:22-24 | Q. Gary supplied the investor's money and you took care of the operations? A. Yes. | |
| 8 | 129:21-25 | Q. At the time that Exhibit 7 [the F&S Agreement] was executed, you understood that Mr. Felsher expected you, okay, to devote the time and expense – the time and effort necessary to manage the portfolio, correct? A. Yes. | |
| 9 | 132:22-133:5 | Q. In the last five years, you have not been involved in overseeing any of the management of the -- any of the remaining assets of FGHP, correct? MR. KEYSER: Object to the form. A. You're saying any of the management, the property management? No. I've not been involved in property management. | |
| 10 | 134:9-135:15 | Q. Let's talk about the FGHP properties. In the last five years, you have not been involved in overseeing the management of any of those properties, correct? A. Let me ask you a question more closely. The -- we had made the determination to change the business plan from liquidating all of the assets and giving everybody their money back to taking it – to increasing the value of the assets by finishing the construction, leasing them out, so on and so forth, in order to enhance the value and ultimately to, you know, finance them, get our money back and enjoy the fruits of our labor by continuing to own, operate and manage them. To that end, I created a -- a property management company from Hope Law, hiring Colliers to do the -- the books and records for a point and then hiring individuals in the local market to take care of the basic day-to-day needs of the properties and to manage that stuff or oversee it from the New York office. | |

2

| No. | Page & Line | Testimony | Objection(s) |
|---|---|---|---|
| | | Q. And -- and the New York office, one of the owners was going to have to then oversee whatever the property manager was doing, whatever Colliers was doing, whatever contractors were doing, correct? <br> A. Yes. And I initially did that, and then as we worked out the portfolio, trimmed down what we had to those things that we wanted to keep, I put in place the property management company and we hired ultimately Jay Benowitz who came in there initially as the controller, dealing with the books and over time, took over the -- and was quite covetous of it, the -- the -- the profit -- the asset management, if you will, the oversight of those -- of those properties. | |
| 11 | 135:23-136:2 | Q. Jay Benowitz is an employee, correct? <br> A. That is correct. <br> Q. Okay. Jay Benowitz is not an owner, right? He's not one of the partners of FGHP, correct? <br> A. That's correct. | |
| 12 | 136:3-6 | Q. Okay. And with respect to the owners of that FGHP, you -- in the last five years you've not been involved in overseeing Mr. Benowitz's work, correct? <br> A. That's correct. | |
| 13 | 142:10-13 | Q. Well, Mr. Felsher told you at the time that he entered in this transaction that he expected you to manage the asset – the portfolio, correct? <br> A. Yes. | |
| 14 | 143:6-11 | Q. Jay Benowitz can't decide on his own as -- Jay Benowitz can't decide on his own with -- whether to go with a particular tenant or not, correct? That's an ownership decision, is that correct? <br> A. That's correct. | |
| 15 | 162:21-163:3 | Q. Well, let me ask you a question first. Today, you are not devoting any of your time to the management of overseeing of any of the assets of FGHP, correct? <br> MR. KEYSER: Form. <br> A. What? <br> MR. KEYSER: You can answer. <br> A. Not in a meaningful way. | |
| 16 | 164:9-15 | Q. When did you last perform any services that you considered to be in connection with your obligations to manage the FGHP portfolio? <br> A. I signed two guarantees within the last year, plus or minus, of somewhere between 10 and 20 million dollars, enabling the company to finance or continue to financing its properties. | |
| 17 | 167:24-168:7 | Q. In the last five years you have done nothing in connection with your obligation to manage the assets of the FGHP portfolio, correct? | |

3

| No. | Page & Line | Testimony | Objection(s) |
|---|---|---|---|
|  |  | A. I disagree with that characterization. I think that I have put the infrastructure in place in order for this to be done whether I was dead – or done well whether I was dead or alive. And having done that, I think I have fulfilled my obligation. |  |
| 18 | 171:15-25 | Q. Did you ever pick up the phone and call him and say, "Hey, Gary, I know I am responsible for managing these assets, but I'm going back to Rye and invest in my own businesses, start my own company, do my own thing, so you take over the operations here." Did you ever say that? <br> A. We had a number of -- <br> Q. Did you ever say that? Yes or no. <br> A. Not to my knowledge. <br> Q. Did you say anything close to that? <br> A. No. I didn't think it was necessary. |  |
| 19 | 172:4-12 | Q. Did you ever pick up the phone and call Mr. Benowitz or Mr. Felsher and, say, "Hey, I want to be involved in approving leases here? I want the monthly reports. I want..." did you ever say in the last five years -- did you ever pick up the phone and say, "Hey, I want the monthly reports and I want the monthly information. I want to be involved in managing this operation." <br> A. No. |  |
| 20 | 172:13-17 | Q. And, in fact, what year did Mr. Benowitz kind of took over and your services were no longer needed? <br> A. I don't have – I couldn't answer that off the top of my head. |  |
| 21 | 173:23-174:4 | Q. Okay. And so somebody has -- somebody has to be taking the ultimate responsibility for that, and right now, the only partner who's doing anything with  respect to the operations of the FGHP partnership is Mr. Felsher. He's the only partner doing anything, right? Because you're not. <br> A. Okay. I -- I appreciate that. |  |
| 22 | 174:14-17 | Q. When did you tell Mr. Felsher you were no longer providing any management services in connection with the assets of the portfolio? <br> A. I never said such a thing. |  |
| 23 | 175:16-24 | Q. And when is it that you think that Mr. Benowitz sort of took over -- took over your responsibilities? <br> A. That -- that occurred over a -- an extended period of time. I'm kind of a micromanager and so the -- the -- the parting with that was, you know, somewhat difficult. He wanted very much to assume more responsibility. He came in as a bookkeeper without any experience in terms of real estate asset management. |  |

4

| No. | Page & Line | Testimony | Objection(s) |
|---|---|---|---|
| 24 | 176:21-177:6 | Q. When was it that Jay take over the role?<br>A. Oh, it extended over a period of time. I mean, he -- he had a lot of -- he had a learning curve, you know. He had -- this is something that he wanted to do. He wanted to get more responsibility in working for Gary and -- and handling, you know, more of his affairs. And -- and he came in with -- as really a, you know, a controller with limited skills beyond the bookkeeping. And over a period of time that he learned the -- that the asset -- the real estate side of the business, the asset management and bit by bit overtook that over time. | |
| 25 | 179:21-25 | Q. Okay. And by the way, when you got the demand letter from Mr. Felsher, did you initiate an arbitration contesting what he said?<br>A. No. And that was certainly a – an oversight on my part. | |
| 26 | 180:9-181:4 | Q. And, in fact, when you got the demand from Mr. Felsher, did you pick up the phone and call him and say, "Gary, what are you talking about? I would be..." "I would have been glad to come back and do this."<br>A. I don't recall.<br>Q. Well, you didn't call Gary --<br>A. Okay.<br>Q. -- right? So you didn't take advantage of the remedy in the contract, if you disagreed with his determination?<br>A. I recognize that was a -- was an error.<br>Q. Okay. And you didn't pick up the phone and say, "Hey, Gary, what are you talking about? I thought life was good. Jay was doing a great job. Why are you making this claim," right?<br>A. That's correct.<br>Q. And you didn't write him a letter, didn't send him an email. Didn't do anything to follow up with him and say, "Boy, there's been a big misunderstanding here, Gary," right?<br>A. Right. | |
| 27 | 211:5-12 | Q. And did Mr. Felsher ever tell you he agreed that you -- that in his view, you were released from any obligations under the F&S agreement or the FGHP agreement by virtue of the fact that you had set up this infrastructure?<br>A. Not to my -- not to my knowledge or recollection. But I did not, you know, do an investigation to, you know, look for that. | |

5

Dated:  March 9, 2026

Respectfully submitted,

**GREENBERG TRAURIG, P.A.**
777 South Flagler Drive, Suite 300
East West Palm Beach, FL 33401
Telephone: (561) 650-7900
Facsimile:  (561) 655-6222

By:    */s/ Robert R. Kane III*
        **ROBERT R. KANE III, ESQ.**
        Florida Bar No. 99488
        Robert.Kane@gtlaw.com
        whitfieldd@gtlaw.com
        **MARK F. BIDEAU, ESQ.**
        Florida Bar No. 564044
        bideaum@gtlaw.com
        whitfieldd@gtlaw.com
        WPBLitDock@gtlaw.com
        **COREY A. GROSS, ESQ.**
        Florida Bar No. 1032362
        Corey.Gross@gtlaw.com
        sandra.famadas@gtlaw.com

        *Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 9, 2026, I electronically filed the foregoing document using the ECF/CM e-filing portal, which will send notification of filing to all counsel of record.

By:    */s/ Robert R. Kane III*
        ROBERT R. KANE III, ESQ.

6